IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVID LEWIS,                  :
                               :
     Plaintiff,        :
                               :
vs.                     : CIVIL ACTION NO. 16-00111-B
                               :
AMERIPRISE INSURANCE COMPANY,  :
 *et al.*,                 :
                               :
     Defendants.      :

## ORDER

    This case is before the Court on Plaintiff David Lewis' Motion to Remand (Doc. 9), and Defendants IDS Property Casualty Insurance Company and Ameriprise Insurance Company's Motion to Strike (Doc. 14). The motions have all been fully briefed, and the parties agree that they are ripe for resolution.

    On May 20, 2016, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 17). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of all matters presented, and for the reasons stated herein, Plaintiff's Motion to Remand (Doc. 9) is **DENIED.** In addition, for the reasons stated herein, Defendants' Motion to Strike (Doc. 14) is **DENIED.**

## I.  Motion to Strike

    On May 4, 2016, Defendants IDS Property Casualty Insurance Company and Ameriprise Insurance Company (collectively "the

Ameriprise Defendants" or "Defendants") filed a Motion to Strike two separate affidavits attached to Plaintiff's Motion to Remand (Docs. 9, 14).  The first affidavit is that of Plaintiff, and the second affidavit is that of an individual named Taylor T. Perry, Jr.  (Doc. 9-1, 9-2).  According to Defendants, the affidavits are offered by Plaintiff in support of his position that he did not fraudulently join a non-diverse party.  Defendants contend that Plaintiff's affidavit attempts to add new factual allegations to his complaint and, thus, runs counter to well established case law on what can be considered on a motion to remand, and that the Perry affidavit contains hearsay and, thus, is inadmissible under the Federal Rules of Evidence.  Defendants thus assert that both affidavits are due to be stricken from the record.  (Doc. 14 at 2).

Motions to strike are ordinarily governed by Federal Rule of Civil Procedure 12(f), which provides that "[t]he court may strike *from a pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  (Emphasis added).  As used in the Federal Rules of Civil Procedure, the word "pleading" is a term of art that is limited to "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."  Fed. R. Civ. P. 7(a); see also Southard v. State Farm Fire & Cas. Co., 2013 U.S. Dist. LEXIS 7283, *19, 2013 WL

209224, *7 (S.D. Ga. Jan. 17, 2013) ("[A] motion to strike is not the proper procedural vehicle to challenge affidavits. . . . Affidavits are not pleadings."); <u>Mann v. Darden</u>, 2009 U.S. Dist. LEXIS 63044, *1-2, 2009 WL 2019588, *1 (M.D. Ala. July 6, 2009)("Only material included in a 'pleading' may be [the] subject of a motion to strike. . . . Motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike.") (citations omitted).

Because the affidavits in question are not pleadings, the motion to strike is **DENIED**.[1]

## II. **Motion to Remand**

### A. **Background Facts**

Plaintiff, David Lewis (hereinafter "Plaintiff"), commenced this action in the Circuit Court of Perry County, Alabama, on February 12, 2016. (Doc. 1-1 at 7). Plaintiff asserts claims for breach of contract and bad faith against the Ameriprise

---

[1] Although the Court has denied Defendants' motion to strike, the Court will consider Defendants' arguments in ruling on the merits of Plaintiff's motion to remand. See generally <u>Haynes v.</u> <u>Twin Cedars Youth & Family Servs., Inc.,</u> 2012 U.S. Dist. LEXIS 35145, *13-14, 2012 WL 895699, *5 (M.D. Ga. Mar. 15, 2012)("Both parties have expended a great deal of time and energy filing motions to strike, which many courts have described as 'time wasters.' . . . In fact, '[u]nless it is clear that the matters stricken have no possible relationship to the controversy and may prejudice the other party, motions to strike are generally disfavored.' . . . Rather than striking a document or a portion thereof, it is usually more appropriate to 'consider a party's objections to affidavits which are filed in support of a motion . . . when ruling on the merits of [the] motion.") (citations omitted).

Defendants, seeking damages for Defendants' alleged misconduct in connection with the denial of coverage under a homeowners insurance policy issued by the Ameriprise Defendants to Plaintiff on his residence. (Doc. 1-1 at 10-11). Plaintiff also asserts claims against Defendant Cherise Williams for negligence, wantonness, and breach of fiduciary duty for her alleged mishandling of the insurance policy application process on Plaintiff's behalf. (Id. at 12-13).

Specifically, Plaintiff alleges in Count One that the Ameriprise Defendants entered into an agreement to insure his home from various hazards, including fire, and then breached that agreement by denying payment under the policy when fire totally destroyed his home and its contents. (Id. at 10). In Count Two, Plaintiff alleges that the Ameriprise Defendants intentionally and without any reasonably legitimate, arguable, or debatable reason denied his claim under the policy. (Id. at 11). In Count Three, Plaintiff alleges that Defendant Williams negligently and wantonly provided wrong or improper information to the Ameriprise Defendants in obtaining the subject insurance policy on his home, causing the Ameriprise Defendants to "contend that Plaintiff does not have insurance covering his home for the above described fire loss." (Id. at 12). In Count Four, Plaintiff alleges that Defendant Williams breached a fiduciary duty of trust between herself and Plaintiff, causing

Plaintiff "to not be paid for his fire loss."   (Id. at 13).

On March 14, 2016, the Ameriprise Defendants filed a Notice of Removal under 28 U.S.C. §§ 1441 and 1446 on the basis of diversity jurisdiction.  (Doc. 1).  On April 13, 2016, Plaintiff filed the instant Motion to Remand this action to the Circuit Court of Perry County, Alabama, alleging that the basis for federal jurisdiction alleged by Defendants, i.e., diversity of citizenship under 28 U.S.C. § 1332, is lacking because both Plaintiff and Defendant Williams are "residents"[2] of the state of Alabama.  (Doc. 9; Doc. 1-1 at 7).

In the Notice of Removal and in Defendants' response to Plaintiff's Motion to Remand, the Ameriprise Defendants argue that Defendant Cherise Williams is fraudulently joined in this action and, thus, that her citizenship should not be considered for purposes of determining diversity of citizenship.  (Doc. 1 at 5; Doc. 13).  In light of these motions and responses, the

---

[2] The Eleventh Circuit has recognized that "[c]itizenship, not residence, is the key fact that must be  alleged in the complaint to establish diversity for a natural person." Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994).  "For diversity purposes, a person is a citizen of the state in which he is domiciled." Slate v. Shell Oil Co., 444 F. Supp. 2d 1210, 1214 (S.D. Ala. 2006).  "That said, while the two concepts are analytically distinct, a party's place of residence is prima facie evidence of his domicile." Slate, 444 F. Supp. 2d at 1215 n.9.  In this case, the parties do not dispute that Plaintiff and Defendant Williams are both domiciled in, and citizens of, the state of Alabama.

Court turns to the question of jurisdiction.

**B. Analysis**

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must establish the existence of federal jurisdiction.  See Friedman v. New York Life Ins. Co., 410 F.3d 1350, 1353 (11th Cir. 2005) ("[I]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists.") (citation omitted).  Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand.  See University of S. Ala. v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). "[T]here is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand."  Russell Corp. v. American Home Assur. Co., 264 F.3d 1040, 1050 (11th Cir. 2001).

As noted, *supra*, this action was removed by the Ameriprise Defendants pursuant to 28 U.S.C. §§ 1441 and 1446 on the basis of diversity of citizenship under 28 U.S.C. § 1332.  Title 28 U.S.C. § 1441(a) provides, in relevant part:

> Except as otherwise expressly provided by
> Act of Congress, any civil action brought in
> a State court of which the district courts
> of the United States have original
> jurisdiction, may be removed by the

> defendant or the defendants, to the district
> court of the United States for the district
> and division embracing the place where such
> action is pending.

28 U.S.C. § 1441(a). Where the alleged basis for federal jurisdiction is diversity under 28 U.S.C. § 1332, the removing defendant has the burden of demonstrating that there is (1) complete diversity of citizenship and (2) an amount-in-controversy greater than $75,000. See 28 U.S.C. § 1332(a); see also University of South Alabama, 168 F.3d at 412 ("Where jurisdiction is predicated on diversity of citizenship, all plaintiffs must be diverse from all defendants.").[3]

As discussed, Plaintiff alleges that removal is improper inasmuch as Plaintiff and Defendant Cherise Williams are both citizens of the state of Alabama, a fact which, on its face, destroys diversity. The Ameriprise Defendants counter that Plaintiff has fraudulently joined Cherise Williams as a Defendant in this case in an effort to defeat complete diversity; thus, her citizenship cannot be considered for purposes of determining diversity jurisdiction.

"The determination of whether a resident defendant has

---

[3] The parties do not dispute that the amount in controversy requirement has been met, nor do they dispute the timeliness of Defendants' removal. The dispute in this case centers solely on the diversity requirement and whether Defendant Williams has been fraudulently joined.

been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). The proceeding appropriate "for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997) (quoting B, Inc. v. Miller Brewing Co., 663 F.2d 545, 549 n.9 (5th Cir. 1981)). In such a proceeding, the district court must "resolve all questions of fact . . . in favor of the plaintiff." Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989). Additionally, any uncertainties about substantive state law must be resolved in favor of the Plaintiff. Crowe, 113 F.3d at 1538.

Under Eleventh Circuit precedent, joinder is fraudulent in three situations: (1) when there is no possibility that the plaintiff can prove a cause of action against the resident defendant; (2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) when a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant. See Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998); accord

Loop v. Allianz Life Ins. Co. of N. Am., 2009 U.S. Dist. LEXIS 313222009, *10, 2009 WL 981988, *4 (S.D. Ala. 2009).

In the instant case, the Ameriprise Defendants rely on the first prong of the Triggs analysis and argue that that there is no possibility that Plaintiff can prove a cause of action for negligence, wantonness, or breach of fiduciary duty against Defendant Williams.   (Doc. 1 at 11).   Having reviewed the parties' submissions and the applicable law, the Court agrees with Defendants.

In his Complaint, Plaintiff alleges that on June 20, 2015, he and the Ameriprise Defendants entered into an agreement whereby Defendants agreed to insure his home from various hazards, including fire. (Doc. 1-1 at 10).   However, on August 15, 2015, Plaintiff's home was totally destroyed by fire, and the Ameriprise Defendants refused to pay his claim under the policy because of the negligence and wantonness of Defendant Cherise Williams in providing "wrong or improper" information to the Ameriprise Defendants in obtaining the policy.   (Id. at 10-12).

With respect to Cherise Williams, the complaint further alleges that Williams "represented to Plaintiff that she was knowledgeable and capable of *assisting Plaintiff* in obtaining affordable homeowner's insurance;" (2) that she "was familiar with the home for which insurance was being purchased and was

given information regarding the home;" (3) that she "did negligently and/or wantonly provide wrong or improper information, without legal authority to do so, to the insurer in obtaining the policy covering Plaintiff's home such that the Defendants . . . now contend that Plaintiff does not have insurance covering his home for the above described fire loss"; and (4) that "[a] fiduciary duty of trust existed between Plaintiff and Defendant, Cherise Williams," which she breached, causing the Ameriprise Defendants to deny Plaintiff's claim. (Doc. 1 at 11; Doc. 1-1 at 8, 12-13) (emphasis added).

Providing background to the foregoing allegations is Plaintiff's deposition testimony in which he testified that Cherise Williams is his former long-time girlfriend and the mother of his child, with whom he previously lived. (Doc. 1-1 at 119, 122). With respect to her involvement in obtaining the subject insurance policy, Plaintiff testified: "I had my friend Sharese [Cherise Williams] to call and get proof of insurance coverage for me. And when she called Ameriprise, Ameriprise was the one that called her back and gave her a better deal, and she set up everything. The only thing I did was sign the application when they mailed it to me." (Id. at 124). The colloquy continues: "Q. Okay so she [Cherise Williams] compared the two quotes? She got two quotes. A. Yes. Q. And Ameriprise gave you the better deal? A. Yes. Q. And so you chose them? A.

Yes."   (Id. at 124-25).   "Q. Did you ask Sharese [Cherise Williams] to check out insurance for you? A. Yes, I did."   (Id. at 126).   "Did you ever receive a letter from the company before the loss explaining to you that the policy was going to be cancelled unless they could come and take pictures and get the building materials and the layout of your home?   A. I know they called on the phone and said that it would have been cancelled if they had – couldn't come out and do an inspection, meet me for an inspection."   (Id. at 127).   ". . . So there was a telephone call regarding the cancellation if this inspection wasn't made. Okay. And Sharese [Cherise] did tell you about that? A. She told me about that."   (Id. at 129-30).   According to Plaintiff, the inspection never took place because he was "waiting on [the Ameriprise Defendants] to call [him] back to set up [an inspection]."   (Id. at 130).   These facts are not in dispute.[4]

---

[4] Plaintiff also presents the affidavit of Taylor T. Perry, Jr., who attests that he was present when David Adamczyk, an independent fire investigator hired by the Ameriprise Defendants, and Kristine Best, a previous attorney for the Ameriprise Defendants, examined Plaintiff under oath about his insurance claim.   (Doc. 9-2 at 1).   According to Perry, at the conclusion of the examination, Adamczyk stated that "Cherise Williams is primarily the person at fault for causing the contractual issues that [Adamczyk] and the insurer have with this claim."   (Id. at 2).   According to Perry, Adamczyk told Perry that Plaintiff needed to file suit against Cherise Williams "for not having insurance coverage for this loss," and Best agreed.   (Id.).   Plaintiff also presents his own affidavit (Continued)

The question before the Court then is whether Plaintiff has stated even an *arguable* cause of action against Defendant Williams under Alabama law. Plaintiff argues that Williams voluntarily assumed a duty to obtain homeowners insurance for him, that she negligently and wantonly performed that task by providing "wrong or improper information" to the Ameriprise Defendants, and that her actions proximately caused the Ameriprise Defendants to deny Plaintiff's claim under the policy for his fire loss. (Doc. 1-1 at 12; Doc. 10 at 5-6; Doc. 15 at 1, 6). The Ameriprise Defendants counter that neither the allegations in the complaint nor the evidence before the Court establishes even the possibility that Cherise Williams' actions or inactions taken to "assist" Plaintiff (her boyfriend) in obtaining insurance on his home states a claims for negligence, wantonness, or breach of fiduciary duty claim under Alabama law.

At the outset, the Court notes that:

> For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state

---

in which he states that he was aware that Defendant Williams had applied for insurance before and so he believed that she was capable of finding affordable homeowners insurance for him. (Doc. 9-1 at 1).

defendant.   For a remand, the plaintiff's
burden is much lighter than that: after
drawing all reasonable inferences from the
record in the plaintiff's favor and then
resolving all contested issues of fact in
favor of the plaintiff, there need only be
'a reasonable basis for predicting that the
state law *might* impose liability on the
facts involved.'  .  .  .  Because the
procedures are similar while the substantive
standards are very different, district
courts must exercise extraordinary care to
avoid jumbling up motions for remand and
motions for summary judgment that come
before them.

In the remand context, the district court's
authority to look into the ultimate merit
of the plaintiff's claims must be limited to
checking for obviously fraudulent or
frivolous claims.   Although we have said
that district courts may look beyond the
face of the complaint, we emphasize that the
district court is to stop short of
adjudicating the merits of cases that do not
appear readily to be frivolous or
fraudulent.

Anderson v. Allstate Life Ins. Co., 2001 U.S. Dist. LEXIS

2603, *22-23, 2001 WL 228057, *7-8 (S.D. Ala. Feb. 1, 2001)

(emphasis in original).  "In cases such as this where there has

been no discovery as of the time of removal, . . . to block a

fraudulent-joinder charge based on lack of legal support, a

plaintiff need only show that [his] claim against a resident

defendant is warranted by existing law or by a nonfrivolous

argument for the extension, modification, or reversal of

existing law or the establishment of new law."  Anderson, 2001

U.S. Dist. LEXIS 2603 at *22-23, 2001 WL 228057 at *8.  Although

this threshold is low, the Court finds that Plaintiff has failed to meet it in this case.

The existence and scope of a voluntarily assumed duty is a matter for determination in light of all the facts and circumstances involved and is a question of law for the court to resolve. Bryan v. Alabama Power Co., 20 So. 3d 108, 119 (Ala. 2009). Alabama law recognizes that "one who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care and is liable for negligence in connection therewith." Bryan, 20 So. 3d at 119 (citations omitted). Stated differently, "when a person undertakes an employment, which requires care and skill, whether for reward or not, a failure to exert the measure of care and skill appropriate to the measure of such employment is negligence for which an action will lie." Beasley v. MacDonald Eng'g Co., 249 So. 2d 844, 846 (1971).

In one of the earliest cases recognizing the assumed duty doctrine, the Alabama Supreme Court explained: "while a volunteer is not responsible for the failure of success of the act done by him, . . . if by undertaking to do it, . . . he brings about a state of affairs which results in injury that would not have occurred if he had not made the effort at all, he is liable." H.H. Parker & Bro. v. Hodgson, 55 So. 818, 819 (1911) (holding that "while an excavator on an adjoining lot is

14

not under any obligation 'to brace, underpin, or otherwise protect the walls of buildings on adjoining lands, to keep them from settling or falling on account of such excavation,' yet, if he 'undertakes to do this, he is liable for failure to use reasonable skill and care in the performance of the work.'").

For over one hundred years, the Alabama courts have applied the assumed duty doctrine in various contexts, as evidenced by the following cases, see, e.g.: Springhill Hospitals, 5 So. 3d at 520 (finding as a matter of law that a pharmacist did not voluntarily undertake a duty of care to a patient and stating that "the scope of the duty voluntarily undertaken . . . by a pharmacy is a fact-specific inquiry based on the totality of the pharmacy's communications with the patient and the patient's reasonable understanding, based on those communications, of what the pharmacy has undertaken to provide."); Bryan, 20 So. 3d at 119 (holding that Alabama Power Company did not assume a duty to farmers to operate a dam so as to prevent flooding on their property where there was no evidence of a relationship between the parties such that the farmers changed the way they used their property in reliance on Alabama Power Company's activities); Dailey v. City of Birmingham, 378 So. 2d 728, 729 (Ala. 1979) (finding a dispute of fact as to whether the City voluntarily assumed a duty to protect the public when it began the construction of a fence next to a ditch and then negligently

failed to complete the construction); <u>Parker v. Thyssen Mining</u> <u>Constr., Inc.</u>, 428 So. 2d 615, 618 (Ala. 1983) (finding that an employer did not assume a duty to obtain evidence for its employee, which was needed to enhance the employee's potential lawsuit against a third-party); <u>Dailey v. Housing Auth. for</u> <u>Birmingham Dist.</u>, 639 So. 2d 1343, 1346 (Ala. 1994) (refusing to hold that the Housing Authority, "by hiring a security guard and setting out that guard's duties and roles, voluntarily assumed the duty to provide a totally crime-free environment for [plaintiff]. Such a holding would discourage housing authorities and other landlords from hiring security guards or otherwise working to protect their tenants from criminal acts.").

More precisely, the Alabama courts have applied this doctrine in the context of wrongful "failure to procure insurance," as alleged here.   <u>See</u>, <u>e.g.</u>, <u>Thompson v. United</u> <u>Companies Lending Corp.</u>, 699 So. 2d 169, 175 (Ala. Civ. App. 1997) (recognizing that "[b]oth a negligent failure and a wanton failure to procure insurance are actionable under Alabama law" and holding that a mortgagee voluntarily undertook the duty to procure insurance coverage for its mortgagor); <u>Timmerman Ins.</u> <u>Agency, Inc. v. Miller</u>, 229 So. 2d 475, 478 (1969) (holding that a jury question existed as to whether an insurance agent had undertaken the duty to secure insurance on behalf of his customer, the insured, and noting that, in such cases, "a broker

or agent is liable for failure to notify the owner that he cannot obtain insurance."); Waldon v. Commercial Bank, 281 So. 2d 279, 282–83 (Civ. App. 1973) (finding that bank/lender voluntarily undertook duty to procure credit life insurance for its customer/borrower and stating "[t]he present cause of action rests . . . on the appellee's alleged undertaking to secure credit life insurance for consideration for the joint obligors on the life of . . . appellant's husband. Appellant alleges reliance upon such undertaking.   This court, therefore, concludes that the [allegations] . . . give rise to a duty owed by appellee to appellant.").

Having considered the relevant case law at length, and viewing Plaintiff's allegations and the evidence presented by the parties in a light most favorable to the Plaintiff, the Court finds that there is no possibility that a cause of action for negligent or wanton failure to procure insurance exists in this case.   First, the Court finds that the cases recognizing the assumed duty doctrine are inapposite to the circumstances at issue in the present case.   Here, the allegations, taken with the evidence submitted by the parties, reflect a *joint* undertaking in which Cherise Williams, Plaintiff's girlfriend, "*assist[ed]* Plaintiff in obtaining affordable homeowner's insurance," including making inquiries to insurance companies on his behalf.   (Doc. 1-1 at 8) (emphasis added).   Plaintiff

17

describes his relationship with Williams as one in which Williams "assist[ed]" him in procuring insurance (id.), including speaking to insurance companies on his behalf and obtaining insurance quotes, which she then presented to Plaintiff. (Id. at 124-25). It was *Plaintiff*, however, who retained the decision-making authority and chose between the quotes, electing to go with Ameriprise because they gave him the better deal. (Id.). Ameriprise then mailed Plaintiff the insurance application form, and *Plaintiff* signed the completed form, providing answers to requested information about his home and property. (Id. at 124-25, 145-46). According to Plaintiff, Defendant Williams subsequently informed him that the insurance policy would be cancelled if *Plaintiff* did not meet with the Ameriprise representative at his home for an inspection; however, the inspection never took place because *Plaintiff* was waiting on the Ameriprise Defendants to call *him* back to set up an inspection. (Id. at 127-30).

The instant facts are not analogous to those in which the Alabama courts have imposed an assumed duty to act, much less an assumed duty to procure insurance. Williams is not an insurance broker or a banker. She was merely Plaintiff's girlfriend who offered to assist him with obtaining insurance on his home.

Although Plaintiff alleges that Williams voluntarily undertook to provide information to the Ameriprise Defendants on

his behalf and then performed that duty negligently, Plaintiff has failed to establish that Williams' actions in providing "wrong or improper" information to the Ameriprise Defendants "brought about a state of affairs which result[ed] in injury that would not have occurred if [she] had not made the effort at all," see Hodgson, 55 So. at 819. This is particularly true given that Plaintiff reserved the control in the joint undertaking for himself, *i.e.*, he decided which insurance quote was chosen; he signed the completed application that was given to the Ameriprise Defendants; and he failed to meet with the Ameriprise representatives for a home inspection while fully aware that his failure to do so would result in cancellation of the policy. In sum, Plaintiff's own allegations and testimony, viewed in the light most favorable to him, provides no basis for a finding that Williams voluntarily undertook to procure insurance for his home and that he reasonably relied upon such to his detriment.

Thus, the Court finds that there is no possibility that Plaintiff can prove a cause of action against Defendant Williams for negligent or wanton failure to procure insurance on the facts of this case. This finding is buttressed by the fact that the parties have presented no Alabama case law imposing liability under circumstances even remotely analogous to those presented here, and the Court's research has not uncovered any

such cases.

Last, Plaintiff asserts a claim against Defendant Williams for breach of her alleged fiduciary duty of trust to him. (Doc. 1-1 at 13). While Alabama law recognizes a cause of action for breach of fiduciary duty, the cases involve vastly different circumstances than those involved here. Under Alabama law, the elements of the tort of breach of fiduciary duty are: "(1) the existence of a fiduciary duty between the parties; (2) the breach of that duty; and (3) damages suffered as a result of the breach." Regions Bank v. Lowrey, 101 So. 3d 210, 219 (Ala. 2012) (finding that a bank, serving as trustee, did not breach its fiduciary duty to beneficiaries of a trust). The Alabama courts have described circumstances in which a fiduciary relationship may arise as follows:

> Such a relationship is one in which one person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible. It arises in cases in which confidence is reposed and accepted, or

> influence acquired, and in all the variety
> of relations in which dominion may be
> exercised by one person over another.

Power Equip. Co. v. First Alabama Bank, 585 So. 2d 1291, 1297-98

(Ala. 1991) (citations, internal quotation marks, and brackets

omitted).   As discussed above, such are not the circumstances

alleged here.[5]   Therefore, based on the foregoing authorities,

the Court finds that there is no possibility that Plaintiff

could recover against Defendant Williams for an alleged breach

of fiduciary duty.

Accordingly, the Court finds that Cherise Williams' joinder

in this case is fraudulent, and that the Ameriprise Defendants

properly removed this action from state court.

## III. Conclusion

For the reasons discussed herein, it is **ORDERED** that

---

[5] Even banks and insurance agents have been held not to owe a
fiduciary duty to their clients.  See, e.g., Maloof v. John
Hancock Life Ins. Co., 60 So. 3d 263, 274 (Ala. 2010) ("though
cordial and long-standing," there was no evidence that the
relationship between the insurance agent and the plaintiff was
"anything special or outside the typical salesperson-customer
relationship."); Nettles v. First Nat. Bank of Birmingham, 388
So. 2d 916, 921 (Ala. 1980) ("Although [the bank] took an active
role in attempting to save [plaintiff's] Company, the facts
simply do not establish that they assumed control of the
management of the business. Similarly, the fact that [plaintiff]
reposed great confidence in [the bank's] ability to save his
business and the fact that he acquiesced in their
recommendations, ultimately to his financial detriment, does not
serve to establish some special fiduciary relationship which
renders appellees liable for the unfortunate events of this
case.").

Plaintiff's Motion to Remand (Doc. 9) is **DENIED.**   In addition, for the reasons stated herein, Defendants' Motion to Strike (Doc. 14) is **DENIED.**

     **DONE** this **20th** day of **October, 2016.**

                                        **/s/ SONJA F. BIVINS**
                            **UNITED STATES MAGISTRATE JUDGE**